Macdonald, D. Lloyd, J.
The Defendant is charged with two counts of receiving stolen property (G.L.c. 266, §60), eight counts of falsely embossing and altering credit cards (G.L.c. 266, §37(C)(c) and (d)), seven counts of larceny (G.L.c. 266, §30), and one count of illegal possession of credit card manufacturing equipment (G.L.c. 266, §37(j)). Before the Court is a motion to suppress the physical evidence underlying the charges. The motion is DENIED.
Facts
On March 28, 2008 at approximately 9 p.m. Trooper Michael Turgeon (“Turgeon”) of the Massachusetts State Police was on routine patrol on State Highway 6 in Dartmouth heading east and turned left onto Faunce Comer Road heading north. Soon after he made the turn, he observed on his right an individual, subsequently identified as Corey Lacroix (“Corey”), exit a “Digital 2000" cellular phone store. Turgeon observed Corey run out of the store with the hood of his sweatshirt pulled up over his head. Tur-geon watched as Corey proceeded up an incline in the direction of the rear of several nearby retail stores. Turgeon was suspicious that a larceny may have occurred and decided to follow Corey.
Turgeon has been a member of the State Police for four years and was an officer on the New Bedford police force for six years before that. He completed the standard training in both organizations. As a State Trooper, he was assigned to the Bristol County Dmg Task Force for a period of time and attended a special DEA program in connection with that assignment. He has participated in regular in-service narcotics enforcement training.
Turgeon took a right off of Faunce Comer Road into the parking area adjacent to the retail stores in the direction that he had seen Corey run. Turgeon drove behind the stores and observed a parked car with the motor running. A person later identified as the Defendant Cameron Lacroix (the “Defendant” or “Cameron”) was sitting in the front passenger seat with the window down. (Cameron and Corey are cousins.) The driver’s seat was empty. Corey was standing next to the open window with his hands in his pockets.
Turgeon stopped his marked cruiser so that it faced the rear of the car in which the Defendant was sitting. Turgeon’s headlights were on, but he did not activate his emergency lights. Neither the Defendant nor Corey seemed to notice his approach. As Turgeon walked toward them, he observed that the Defendant had in his hands what appeared to be a number of credit cards that he was moving together. The car’s interior light was on. Turgeon, who was wearing his uniform, asked the Defendant and Corey what they were doing.
On seeing Turgeon, the Defendant made a gesture as if he was tucking something under his seat. Corey responded to Turgeon by stating that they were there to buy a cell phone. Turgeon asked why they had not parked in the parking spaces in front of the cell phone store.
Turgeon then asked the Defendant what he had put by his feet. The Defendant responded, “Nothing.” Tur-geon asked him again, and the Defendant held up his wallet. From his earlier observations, Turgeon knew that the Defendant had not had his wallet in his hand but rather card-like items. While this exchange occurred, the Defendant continued to gesture as if he was trying to tuck something or retrieve something from under his seat.
*162 Concerned for his safety in light of the circumstances, Turgeon ordered the Defendant out of the car and pat frisked him. He did not find anything unlawful. However, the Defendant seemed very nervous to Turgeon, and he tensed up and shook while Turgeon patted him down.
During the pat down, Turgeon noticed a Sony Play-station and an XBox 360 game box in the back seat of the car. They were packaged as if for retail sale. Turgeon asked the Defendant and Corey whether they had receipts for the gaming systems. Corey responded that they had just purchased them at a store in Rhode Island but that they had thrown the receipts out the window on their way to Dartmouth.
Concerned that the Defendant had earlier been reaching for a weapon under the seat, Turgeon then inspected the passenger area of the car to see if a weapon was there. Just as Turgeon was about to do so, Officer Lackey of the Dartmouth Police Department (Lackey) arrived on the scene. Turgeon had not requested assistance, but Lackey apparently had seen Turgeon’s cruiser and volunteered his help. Turgeon instructed the Defendant to sit in Turgeon’s cruiser. The Defendant said that he wanted his attorney. Turgeon replied that the Defendant was not under arrest and that he would be released in a few minutes.
Returning to the vehicle, Turgeon observed plastic gift cards on the floor, 18 in all, near where the Defendant’s feet had been. He also saw the Defendant’s wallet. The gift cards were Visa cards. Corey volunteered that they were gifts from his grandparents, who sent them to Corey and Cameron each month from their home in Florida. Turgeon looked inside the Defendant’s wallet and found more gift cards. These were issued in the name of Dunkin’ Donuts, Wendy’s and Subway.
Expanding his inspection to the rear passenger area, Turgeon observed in plain view a receipt from a Digital 2000 store dated March 27, 2008 (the day before) for a $241.50 purchase of a cell phone and an XBox gaming system. The purchaser’s name was Anthony Foster, with a Maine address. The receipt reflected that the purchaser had used two credit cards and cash. The signature was illegible.
Four cell phones were also in plain view. None of the cell phones were in retail packaging.
Meanwhile, Lackey told Turgeon that Corey had volunteered that he had a prescription for Oxycontin and that there was a pill container in the car with medication. Turgeon found the container in the back seat. It had Corey’s name on it and contained pills, a razor blade, and a straw. Drawing on his experience in narcotics enforcement, Turgeon recognized the straw and the razor as implements to “crunch and snort” drugs to obtain the effect of the pills faster than if ingested orally. At that point, Turgeon instructed Corey to sit in the back seat of Lackey’s cruiser.
On further examination of the interior of the car, Turgeon noticed a GPS direction device on the windshield. The GPS device was on. Turgeon accessed the “Recent Locations” function, and the device displayed approximately five Toys-R-Us store locations in Rhode Island and Massachusetts.
Turgeon then ran a criminal record check on Corey and the Defendant. He learned that Corey had a shoplifting charge and that the Defendant’s record included a larceny charge out of New Bedford and federal charges for aggravated identity fraud, computer fraud, wire fraud, and a bomb hoax.
The criminal record information, in combination with the multiple gift cards, the cell phone and XBox receipt, and the overall suspicious conduct and statements of the Defendant and Corey led Turgeon to believe that they had committed a credit card and identity fraud related crime. Turgeon then took the keys from the car’s ignition and opened the trunk. In the trunk he discovered seven more Sony PlayStations and an Aspire brand laptop computer. All were packaged for retail sale.
The contents of the trunk confirmed Turgeon’s suspicions. Dartmouth Police Department Detective Maynard arrived with a camera and took photographs of the items.
Turgeon believed that further investigation was warranted to determine whether the Defendant and Corey lawfully possessed the items. Accordingly, Tur-geon informed them that they were free to go, but that he would temporarily hold the cards, game boxes, computer, and other items in State Police custody. He told the Defendant and Corey that they could retrieve the items at the State Police barracks if they could produce receipts or other proof of purchase.
Turgeon’s subsequent investigation determined that the videogame systems and computer were stolen and that the gift cards had been illegally obtained and embossed. The Defendant was accordingly indicted.
Discussion
“Reasonableness is the ’ ’’touchstone" of Article 14 and the Fourth Amendment.’ Commonwealth v. Roland R., 448 Mass. 278, 281 (2007). Accordingly, a valid search is limited to ‘any area, place, or container reasonably capable of containing the object of the search.’ Commonwealth v. Signorine, 404 Mass. 400, 405 (1989)." Commonwealth v. Garden, 451 Mass. 43, 51 (2008). See also Commonwealth v. Cast, 407 Mass. 891, 906 (1990) (“The scope of a warrantless search of an automobile ... [is defined] by the object of the search and the places in which there is probable cause to believe that it may be found” (citation omitted)).
The seizure of objects by Trooper Turgeon resulted from a succession of reasonable judgments on his part that suspicious criminal activity was afoot. As he took each investigative step, his suspicions were objectively reinforced by additional suspicious circumstances. Those circumstances provided the justification for the *163 investigative measures that followed which involved a wider area to be searched. By the time Turgeon opened the trunk of the defendant’s car, Turgeon had probable cause to believe that a credit card-facilitated larceny had occurred. The trunk was a likely place that the fruits of the larceny could have been hidden.
That in the exercise of his professional judgment Turgeon thereafter decided not to arrest the Defendant but, instead, to impound the suspicious items for safekeeping while further inquiries were made does not affect the essential fact that probable cause of a crime had been objectively established.
Turgeon proceeded reasonably and in calibrated fashion. Each investigative step that enlarged the scope of his search was informed beforehand by newly acquired facts that corroborated the objective basis of his suspicions. Accordingly, there are no grounds to suppress the evidence seized.
Proceeding in order through the sequence of events and the grounds that existed for the investigative measures taken by Turgeon:
a. The Initial Stop and Threshold Inquiiy
A police officer is justified in making a stop if he has reasonable suspicion that a person is committing, just committed, or is about to commit a crime. Commonwealth v. Silva, 366 Mass. 402, 406 (1974). “Seemingly innocent activities, taken together can give rise to reasonable suspicion justifying a threshold inquiiy.” Commonwealth v. Grandison, 433 Mass. 135, 139 (2001) (citation omitted).
Here, Turgeon observed Corey running away from a cellular phone store with the hood of his sweatshirt up. He did not go to a car parked in the regular parking lot but rather ran away from the lot and up an incline to an area behind several other stores. Turgeon soon found Corey standing near a running car parked alone behind the stores. Based on these observations and his law enforcement experience, Turgeon had a reasonable suspicion that a crime may have just occurred.
As Turgeon approached the two men, he observed the Defendant sitting in the vehicle next to Corey shuffling what appeared to be cards. Upon Turgeon announcing his presence, the Defendant leaned forward and appeared to be reaching below the front seat. When Tur-geon asked them what they were doing, he was given the improbable explanation that they were there to buy a cell phone when there was readily available parking immediately in front of the nearby cell phone store.
The Defendant’s furtive actions were independently suspicious and raised a reasonable concern that he may have been trying to secret either contraband or a weapon. Turgeon’s instruction that the Defendant get out of the car and Turgeon’s pat frisk of the Defendant were reasonable. An exit order is appropriate when an officer has reasonable fear for his safely based on articulable facts. Commonwealth v. Gonsalves, 46 Mass.App.Ct. 186, 189 (1999). See also Commonwealth v. Goewey, 452 Mass. 399, 406-07 (2008). Here, Turgeon was alone and outnumbered, and he had observed the Defendant gesturing as if he were tiying to conceal something or reach for something below him.
As Turgeon was frisking the Defendant, he noticed that the Defendant was overtly nervous and tensed up.
Also while frisking the Defendant, Turgeon observed the XBox and the Playstation on the rear seat packaged for retail purchase. Corey’s response to Turgeon when questioned about the game boxes that they had just bought them but had thrown the sales receipts out the window added more reasonable suspicion to what Turgeon was confronting.
b. Preliminaiy Search of the Front Area of the Car
A police officer may search the passenger area of a car for weapons in the course of a pat frisk if he reasonably suspects that he may be in danger. Commonwealth v. Alvarado, 427 Mass. 277, 284 (1998). Turgeon’s apprehension of danger in the circumstances was reasonable. Commonwealth v. Torres, 433 Mass. 669, 675-76 (2001).
The scope of this kind of search is limited to a search for weapons. Silva, 366 Mass. at 408. The police may only open a container found in these circumstances if that container could reasonably hold a weapon. Id. at 410 (finding that search of coin purse was impermissible in the context of a stop and frisk). Turgeon’s observation of the Defendant apparently tucking something under the seat provided the lawful basis to search the area for a weapon.
While looking for a weapon, Turgeon found the 18 Visa gift cards on the floor. The cards were suspicious because the Defendant had denied that they were what had been in his hand when first observed by Turgeon. A police officer in those circumstances could reasonably ask himself: Why would a person deny having such otherwise benign items unless the suspect was doing something unlawful with them? And at this juncture, Turgeon had been told the improbable stoiy that the Defendant and Corey had thrown the sales receipts for the XBox and the Playstation out the window after just purchasing them. Further, when Turgeon located the multiple cards on the floor, Corey volunteered another improbable statement, namely, that the large number of cards was explained by the fact that the Defendant’s and his grandparents sent them monthly gift cards from Florida.
Turgeon’s recovery of the Defendant’s wallet from the floor and his opening of it (and resultant observation of additional gift cards) was reasonable given its minimal intrusion and the mounting suspicious circumstances for which he sought an explanation.
Turgeon’s discoveiy in plain view of four cell phones cast a further suspicious light on Corey’s initial explanation that they were parked where they were for purposes of buying a cell phone.
*164 c.Search of the Rear Seat Area
In the rear passenger areaTurgeon found in plain view a Digital 2000 store receipt, dated the day before, for the purchase of a cell phone and an XBox game system. Turgeon lawfully entered the rear because of the location of the electronic games there and the reasonable interest to determine if there were other items in plain view that could clarify the situation. Seeing the receipt, it was reasonable for Turgeon to pick it up and read it because of the receipt’s plausible relevance to proof of purchase of the game systems and plausible connection to the cards that were then in his possession.
Upon examining the receipt, Turgeon noted that the purchase (dated the prior day) was not in the name of either the Defendant or Corey. Rather, it was in the name of a third parly with a Maine address. The signature was illegible. Taken together with the other things that had unfolded, Turgeon was justified in suspecting that the receipt may have been generated in connection with a fraudulent credit card transaction.
d. Accessing the GPS
At the time that Turgeon accessed the GPS, he was lawfully in the front passenger area of the car for the reasons described above. The GPS was already on, and Turgeon reasonably believed that the GPS could contain information on the Defendant’s and Corey’s recent travels that could shed light on the suspicious circumstances that he was addressing. Upon clicking the “Recent Locations” function, the GPS reported the addresses of five Toys-R-Us stores. That information provided further reasonable suspicion that the Defendant and Corey had been engaged in illegal retail purchases.[1]
e. Search of the Trunk
Turgeon’s search of the trunk was legal because at that point he had probable cause to believe that a crime had been committed, Commonwealth v. Motta, 424 Mass. 117, 122 (1997), and because the trunk could reasonably have contained evidence of that crime. Commonwealth v. Garden, 451 Mass. at 51. See also California v. Acevedo, 500 U.S. 565, 569 (1991).
What converted Turgeon’s mounting suspicions into probable cause was the receipt of the criminal record information with regard to the Defendant and Corey. Corey had a record for shoplifting. The Defendant had a record of state and federal charges, inter alia, for larceny, identify fraud, computer fraud and wire fraud. This information coalesced all the other suspicious circumstances described above into a reasonable objective judgment by Turgeon that a retail credit card larceny had been perpetrated by the Defendant and Corey. Upon searching the trunk, his suspicions were confirmed by the presence of the seven additional Play Stations and a laptop computer.
f.Impounding the Evidence
“The impoundment of an object pending the issuance of a search warrant violates the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights only if it is unreasonable.” Commonwealth v. Kaupp, 453 Mass. 102 (2009) (emphasis added), citing United States v. LaFrance, 879 F.2d 1, 6 (1st Cir. 1989), and Commonwealth v. Catanzaro, 441 Mass. 46, 55-56 (2004).
The SJC’s Kaupp decision emphasizes that reasonableness depends on a fact-sensitive analysis that balances the need to seize against the invasion the seizure represents. Id. The seizure of evidence before seeking a search warrant is lawful when supported by probable cause and exigent circumstances. Commonwealth v. Gentile, 437 Mass. 569, 572-77 (2002).
Here, Turgeon had probable cause to believe that the gaming systems and gift cards were evidence of a crime. The mobility of the car created exigency. Further, the intrusion into the privacy interests at the core of Fourth Amendment and Article 14 protections was markedly less than what would have been involved in an arrest of the Defendant. The property was seized on a provisional basis with the assurance that it would be returned to the Defendant and Corey upon their providing evidence of lawful purchase. The Defendant and Corey were permitted to leave with their vehicle. Turgeon’s conduct to impound the evidence was reasonable in light of all of the circumstances. Kaupp, supra, at 106.
ORDER
The Defendant Cameron Lacroix’s Motion to Suppress is DENIED.

While the GPS information contributed to the aggregate of Turgeon’s reasonable suspicion, it was not material to the ultimate conclusion that probable cause existed for the search of the trunk, as described in the next section. At the time that Turgeon accessed the GPS, he did not have probable cause to search. Accordingly, to the extent that probable cause is required for access to a GPS as an electronic device containing personal information protected by the Fourth Amendment and Article 14, Turgeon’s access would have been improper. (The Court is unaware of cases directly addressing the issue in the GPS context, but other courts have found that there is a constitutionally protected expectation of privacy in cellular phone memory and pager memory. See U.S. v. Wall No. 08-60016 at *8 (S.D.Fla. Dec. 2008) (holding that searching a cellular phone’s memory is analogous to searching a sealed letter, requiring a warrant); Smith v. State, 713 N.E.2d 338, 344 (Ind.App. 1999) (“[T]he Fourth Amendment affords protection from unreasonable search and seizure of the computer memory of a cellular phone to retrieve its electronic contents”); U.S. v. Chan, 830 F.Sup. 531, 534 (N.D.Cal. 1993) (finding that defendant had an expectation of privacy in his pager’s memory).)
However, here, once probable cause was established on evidence independent of that obtained from the GPS, Turgeon would have had independent grounds to access the GPS. Accordingly, the inevitable discovery mle would apply. Commonwealth v. O’Connor, 406 Mass. 112 (1989). Because of the minimal severity of the constitutional violation involved and the good faith of Turgeon in accessing the GPS, there is no occasion to exclude the GPS evidence. Id. at 118-19. See U.S. v. Morales-Ortiz, 376 F.Sup.2d 1131, 1139 (D.N.M. 2004).