## Commonwealth vs. Keith Ericson.

No. 12-P-1639.

Middlesex. December 11, 2013. - May 23, 2014.

Present: Green, Sikora, & Milkey, JJ.

*Obscenity,* Dissemination of matter harmful to minor. *Practice, Criminal,* Motion to suppress, Warrant, Probation. *Cellular Telephone. Search and Seizure,* Plain view, Warrant. *Evidence,* Intent. *Intent.*

A Superior Court judge did not err in denying a criminal defendant's pretrial motion to suppress evidence found by police pursuant to a warrant to search the defendant's cellular telephone for a particular image, where the fact that the police, in good faith, promptly began forensic analysis of the telephone but completed it more than seven days after the warrant's issuance did not violate G. L. c. 276, § 3A [329-332]; where the late return of the warrant by one day did not compel suppression of the extracted evidence [332-333]; and where the plain view doctrine authorized the incidental discovery by police of additional images, plausibly related to criminal activity of which they were already aware, that gave rise to a second criminal charge against the defendant [333-334].

At the trial of an indictment charging violation of G. L. c. 272, § 28, which prohibits the possession of matter harmful to minors with intent to disseminate, the judge's instructions adequately communicated to the jury that images such as those found in the defendant's cellular telephone constituted "matter" within the meaning of the statute. [334-335]

The evidence at a criminal trial was sufficient to establish the essential element of wrongful intent to disseminate matter harmful to minors under G. L. c. 272, § 28 [335-336], and to establish beyond a reasonable doubt that the defendant knew the age of the minor in question and authored messages to her [336-337].

A condition of probation imposing a curfew on a defendant convicted of soliciting a child to pose in a state of nudity did not constitute an abuse of discretion where, given the evidence that established the defendant's dangerous behavior as recidivist, the condition was reasonably related to the probationary goals of protection of the public and deterrence. [337-340]

Indictments found and returned in the Superior Court Department on February 1, 2011.

A pretrial motion to suppress evidence was heard by *Sandra L. Hamlin,* J., and the cases were tried before her.

*Michael A. Nam-Krane* for the defendant.

*Michael A. Kaneb*, Assistant District Attorney (*Patrick Fitzgerald*, Assistant District Attorney, with him) for the Commonwealth.

SIKORA, J. A Superior Court jury convicted the defendant, Keith Ericson, of soliciting, enticing, or encouraging a child to pose in a state of nudity, G. L. c. 272, § 29A(*a*), as appearing in St. 1988, c. 226, § 1, and of possession of matter harmful to minors with intent to disseminate, G. L. c. 272, § 28, as appearing in St. 1982, c. 603, § 2.[1] He challenges the convictions upon multiple grounds. For the following reasons, we affirm.

*Factual background.* The relevant evidence in the light most favorable to the Commonwealth was the following. See *Commonwealth* v. *Latimore*, 378 Mass. 671, 676-678 (1979). On the afternoon of September 25, 2010, the defendant approached A.S., a sixteen year old female, and her boyfriend in a park in the town of Burlington. The defendant claimed to have lost his cellular telephone (cell phone) and asked to borrow A.S.'s cell phone. At the defendant's direction, A.S. placed a number of calls to the defendant's phone. Each call ended with a voice-mail greeting for the construction company "H Super Construction" or "Super Construction." After five or ten minutes, the defendant reported that he had located his phone. Upon leaving the park, A.S. observed the defendant's black pickup truck. The license plate read "H Super," and the truck had a Superman symbol emblazoned on its side.

Later that afternoon, A.S. began to receive text messages from the defendant's cell phone. The messages included a number of personal questions. The defendant asked A.S. her name and age, whether she had a boyfriend, and whether she smoked or drank. After A.S. responded that she was sixteen years old and that she did not drink or smoke, the defendant asked, "So what

---

[1]An understanding of the charges requires one to keep in mind that G. L. c. 272, § 29A(*a*), defines the offense of soliciting, enticing, or encouraging a child to pose in a state of nudity to include a defendant's (1) actual or chargeable knowledge of the targeted person's age as less than eighteen, (2) "lascivious intent," and (3) conduct in which the defendant "solicits or entices . . . [or] encourages . . . such child to pose or be exhibited in a state of nudity for the purpose of representation or reproduction in any visual material."

We shall discuss the text of G. L. c. 272, § 28, in the course of our analysis.

can we do?'' He then asked whether she was a virgin, and when
A.S. responded that she was not, the defendant replied:

> "Ok driving now. Ill text u when stop. Can u text me some
> pics of u, please? And after u just answered that question,
> well im sure that we can find something to do, right?"[2]

A.S. decided to go to the police. During her walk to the Bur-
lington police station, the defendant specified that he wanted
pictures which showed him "[e]verything," "ur face and body."
When A.S. texted "clothes or not," the defendant replied, "Not."

At the police station, A.S. gave her cell phone to Burlington
police Officers Matthew Creamer and Scott Lauder. While the
officers inspected the phone, the defendant sent another mes-
sage requesting pictures of A.S. The officers took possession of
A.S.'s phone and in her persona began communicating with the
defendant directly. Over the next few hours, the defendant boasted
about his sexual prowess, described sex acts which he wanted
to perform with A.S., and requested pictures of her genitals and
buttocks. He also attempted to arrange a time to see her and
told her to delete all of his text messages. On multiple occa-
sions the officers requested that the defendant send A.S. a nude
picture of himself or at least a picture exposing his penis. The
defendant maintained that he would send the requested pictures
only if A.S. first sent the pictures which he had requested.[3] The
exchange never occurred.

At around 10:30 P.M., the defendant sent a picture of himself
in a tank top from the waist up. Just before midnight, Officer
Creamer — still impersonating A.S. — sent a telephone number
to the defendant and requested that he call it. The defendant
replied that he believed that the telephone number belonged to
the police. Officer Creamer then told him to report to the Burl-
ington police station on the following day, September 26.

The defendant did not report as requested. On the morning of
September 27, an unidentified woman delivered the defendant's

---

[2]Spelling and spacing errors in original.

[3]The defendant insisted that A.S. send him pictures of herself first. He
wrote in three separate text messages, "you gotta send pics firs, please?"; "ill
send u mines as soon as i see that its u"; and "u gotta send urs first."

cell phone to the Woburn police department as lost property. While examining the phone to determine its owner, Woburn police Officer Eric Hill observed images of the defendant, his pickup truck, and a penis (the images). The defendant appeared at the police station to retrieve his phone that afternoon, but he left without it when the police told him that it might be evidence of a crime.

On September 29, Officer Creamer retrieved the cell phone and applied for and obtained a warrant effectively authorizing the search of it and the seizure of, among other items, the digital tank top image. Later that day, he arranged for the northeastern Massachusetts law enforcement council computer crimes unit (CCU) at the Medford police department to conduct the search. Seven days later, on October 6, Officer Creamer contacted the CCU and learned that it lacked the proper software to analyze the phone's contents. On October 7, he filed the return of the warrant. Eleven days later, on October 18, Sergeant Matthew Murphy of the cyber enforcement unit of the Middlesex district attorney's office completed a forensic examination of the phone.

Before trial, the defendant moved to suppress the extracted images of the defendant, the penis, and the pickup truck, seized in the execution of the search warrant. The trial judge denied the motion.

*Analysis.* 1. *Search warrant.* The defendant argues that the judge should have suppressed the cell phone images because (a) the execution of the warrant occurred more than seven days after its issuance; (b) the police failed to file the return of the warrant within those seven days; and (c) the seizure by the police of three images of his penis was unlawful because the warrant did not specify their seizure and because the police were not intending to charge the defendant with possession of matter harmful to a minor with intent to disseminate at the time of the seizure. Each contention presents a question of law.[4]

a. *Execution of warrant.* General Laws c. 276, § 3A, as

[4]"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact unless they are clearly erroneous but independently review the judge's ultimate findings and conclusions of law." *Commonwealth* v. *Anderson*, 461 Mass. 616, 619, cert. denied, 133 S. Ct. 433 (2012), citing *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004).

appearing in St. 1964, c. 557, § 5, provides that "[e]very officer to whom a warrant to search is issued shall return the same to the court by which it was issued as soon as it has been served and in any event no later than seven days from the date of issuance thereof." General Laws c. 276, § 2A, inserted by St. 1964, c. 557, § 3, commands the officer executing a search warrant to "make an immediate search."

Five years ago, the Supreme Judicial Court considered whether "failure to complete forensic examination of [a] defendant's computer within seven days constitutes a violation of G. L. c. 276, § 3A, and requires suppression of the results of the search of [the] computer." *Commonwealth* v. *Kaupp*, 453 Mass. 102, 114 (2009). Police had applied for a warrant to search the defendant's computer and associated electronic data storage devices on May 30, made a "mirror image" of the computer's hard drives and storage devices by June 6, and completed a forensic examination of the mirror images of the computer's hard drives by November. *Id.* at 109-110. On appeal from the denial of his motion to suppress, the defendant argued that the search of his computer over a period of months was unreasonable and violative of G. L. c. 276, § 3A. *Id.* at 103.

The court rejected this argument. After recognizing the conclusion of other jurisdictions that "police do not need to complete forensic analysis of a seized computer and other electronic data storage devices within the prescribed period for executing a search warrant," *id.* at 115, and cases cited, the court stated that "[b]ecause a written return listing the devices to be examined was filed seven days after the search warrant issued, there was no violation of G. L. c. 276, § 3A." *Ibid.*

Consistently with the reasoning of *Kaupp*, we conclude that, if police have obtained a warrant to search and seize evidence from a cell phone in their custody, they must attempt but need not complete a forensic examination of the device within seven days of the warrant's issuance.[5,6] The reason for the rule pre-

---

[5]Although *Kaupp* involved the search and seizure of evidence from a computer, the Supreme Judicial Court has recognized that "today's cellular telephones are essentially computers, capable of storing enormous quantities of information, personal, private, and otherwise, in many different forms." *Commonwealth* v. *Phifer*, 463 Mass. 790, 797 (2012).

scribing execution of a warrant within seven days is that "[t]he longer the police wait before executing the warrant . . . the more likely it is that the situation will change so that the facts which supported the magistrate's determination of probable cause will no longer exist." *Commonwealth* v. *Cromer*, 365 Mass. 519, 524 (1974).[7] Where, as here, the cell phone rests in the custody of the police and not of the suspect, the information (content of the cell phone) supporting the probable cause determination is less likely to change.[8] We conclude that a

---

[6]We view *Kaupp* to mean "that failure to *complete* a forensic examination of a computer within seven days is not likely to be ground for voiding an otherwise valid search." Grasso & McEvoy, Suppression Matters Under Massachusetts Law § 7-8[a] (2012-2013).

[7]As noted by the United States Court of Appeals for the First Circuit, "A delay in executing a search warrant may render stale the probable cause finding." *United States* v. *Syphers*, 426 F.3d 461, 469 (1st Cir. 2005), quoting from *United States* v. *Gibson*, 123 F.3d 1121, 1124 (8th Cir. 1997). See Bohn & Muster, The Dawn of the Computer Age: How the Fourth Amendment Applies to Warrant Searches and Seizures of Electronically Stored Information, 8 Suffolk J. Trial & App. Advoc. 63, 71 (2004) (citing *Cromer*, *supra*, for the proposition that the purpose of G. L. c. 276, § 3A, is to ensure that probable cause exists at the time of a warrant's execution).

[8]We recognize that data on a cell phone — even in police custody — may change through the length of time preceding execution of a search warrant. For example, a sophisticated defendant or confederate may remotely wipe the data of a cell phone and thereby render the data irretrievable. *United States* v. *Flores-Lopez*, 670 F.3d 803, 808 (7th Cir. 2012). In addition, incoming text messages may displace stored messages (if the cellular service provider does not archive the messages). However, these possibilities do not necessarily create an exigency requiring an immediate search of a cell phone. See and compare *Kaupp*, 453 Mass. at 106 n.7 (exigency of "potential destruction or loss of evidence" justifying warrantless seizure "dissipated once the computer had been secured").

To preserve probable cause in the circumstance of delayed completion of forensic examination of a cell phone, police may make a "mirror image" of the phone's data. See *Kaupp*, *supra* at 110 (police made "mirror image" of computer's hard drives and of electronic data storage devices). The Federal Rules of Criminal Procedure contemplate that practice. See Fed.R.Crim.P. 41(e)(2)(B) (2009) (warrant to search for and seize property "may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant . . . refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review"). If done promptly, this practice would freeze in time the finding of probable cause. *Commonwealth* v. *Vitello*, 367 Mass. 224, 260-261 (1975) (police must

promptly begun but protracted forensic examination of a cell phone, by itself, does not invalidate an otherwise valid search.[9]

Here, Officer Creamer arranged for a search of the defendant's cell phone on the same day as the issuance of the warrant. Seven days later, he learned that the agency assigned to perform the search lacked the necessary software. A different agency completed a forensic analysis of the phone eleven days later. On these facts, we hold that the completion of the forensic analysis beyond seven days from the issuance of the warrant did not require allowance of the defendant's motion to suppress.[10] The motion judge found specifically that the police had engaged in no bad faith conduct. Nor was there a lapse in the probable cause supporting the issuance of the warrant.

b. *Return of warrant.* The late return of the warrant by one day did not compel suppression of the extracted evidence. "[R]equired warrant return procedures are ministerial, and failure to comply therewith is not ground for voiding an otherwise valid search." *Commonwealth* v. *Kaupp,* 453 Mass. at 114-115, quoting from *Commonwealth* v. *Cromer,* 365 Mass. at 521 n.3.

---

execute a search warrant "before the finding of probable cause is stale"), citing *Sgro* v. *United States,* 287 U.S. 206 (1932).

[9]See *United States* v. *Syphers,* 426 F.3d at 469, and cases cited (upholding five-month delay in conducting forensic examination of computer because "no showing that the delay caused a lapse in probable cause, that it created prejudice to the defendant, or that federal or state officers acted in bad faith to circumvent federal requirements"); *United States* v. *Burgess,* 576 F.3d 1078, 1097 (10th Cir. 2009) (violations of the Federal rule of criminal pocedure governing issuance and execution of search warrants "should not lead to exclusion unless [1] there was prejudice in the sense that the search might not have occurred or would not have been so abrasive if the Rule had been followed, or [2] there is evidence of intentional and deliberate disregard of a provision in the Rule"); *United States* v. *Mutschelknaus,* 592 F.3d 826, 830 (8th Cir. 2010) ("Because the sixty-day extension [for examining the seized computer] did not prejudice [the defendant] and because the officers did not show a reckless disregard of proper procedure, we also affirm the district court's denial of [the defendant's] second motion to suppress").

[10]In making the return of the warrant on October 7, 2010, Officer Creamer inscribed that he had searched the defendant's cell phone on October 4, that the search had yielded "[n]umerous pieces of electronic data, files and code," and that an inventory of the seized property had proceeded in the presence of Officer James Schwab of the CCU. In denying the defendant's motion to suppress, the trial judge found that the search of the defendant's phone had proceeded on October 18, 2010. Her finding is the premise of our analysis.

See *Commonwealth* v. *Pellegrini*, 405 Mass. 86, 88 (1989); *Commonwealth* v. *Torres*, 45 Mass. App. Ct. 915 (1998).

c. *Incidental discovery of harmful matter.* The defendant contends that police unlawfully secured the images of the penis because the warrant did not authorize their seizure and the police were not intending to charge the defendant with possession of matter harmful to minors with intent to disseminate at the time of the seizure.

Article 14 of the Massachusetts Declaration of Rights and the Fourth Amendment to the United States Constitution require that a warrant describe with particularity the objects to be seized. *Commonwealth* v. *Balicki*, 436 Mass. 1, 7-8 (2002). Seizure of objects not identified in a warrant is presumptively unreasonable, and the Commonwealth bears the burden of demonstrating that an exception to the warrant requirement applies. *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. 300, 306 (2010). One such exception is the plain view doctrine. *Ibid.* Under the Fourth Amendment, police may execute a seizure of an object in plain view "(1) where the police are lawfully in a position to view the object; (2) where the police have a lawful right of access to the object; and (3) in cases concerning (a) contraband, weapons, or other items illegally possessed, where the incriminating character of the object is immediately apparent, see *Horton* v. *California*, 496 U.S. 128, 136 (1990); *Commonwealth* v. *D'Amour*, 428 Mass. 725, 731 (1999) . . . ; or (b) other types of evidence ('mere evidence'), where the particular evidence is plausibly related to criminal activity of which the police are already aware." *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. at 306-307. Article 14 "adds the requirement that the police come across the object inadvertently." *Id.* at 307.

Here, the police executed a valid plain view seizure of three images of the penis. The defendant acknowledges that they were lawfully situated to view and to secure the images because the warrant authorized the seizure of the tank top image which the defendant had sent on the night of September 25.[11] *Commonwealth* v. *McDermott*, 448 Mass. 750, 776-777 (2007), and cases cited (police may conduct "cursory" inspection of files

---

[11]The warrant application affidavit referred generically to a single "[d]igital photograph."

on a computer to determine whether they match items listed in warrant). The images of the defendant's penis were "plausibly related to criminal activity of which the police [were] already aware." *Commonwealth* v. *Sliech-Brodeur*, 457 Mass. at 306-307. On the basis of the defendant's statements of his intent to exchange pictures of his nude body for pictures of A.S.'s, the police had reasonable ground to believe that the images of the penis constituted evidence of his solicitation, enticement, or encouragement of A.S. to pose in a state of nudity, G. L. c. 272, § 29A(*a*), as well as evidence of possession of matter harmful to minors with intent to disseminate, G. L. c. 272, § 28. Finally, police discovered the images inadvertently. See *Commonwealth* v. *Balicki*, 436 Mass. at 9-10 ("inadvertence requirement means only that the police lacked probable cause to believe, prior to the search, that specific items would be discovered during the search").

2. *"Matter" harmful to minors.* General Laws c. 272, § 28, as appearing in St. 1982, c. 603, § 2, provides: "Whoever disseminates to a minor any matter harmful to minors, as defined in section thirty-one, knowing it to be harmful to minors, or has in his possession any such matter with the intent to disseminate the same to minors, shall be punished . . . ." In charging the jury, the trial judge defined "matter" as

> "any handwritten or printed material, visual representation, live performance or sound recording including, but not limited to, books, magazines, motion picture films, pamphlets, phonographic records, pictures, photographs, figures, statues, and plays."

Section 28 draws its definition of "matter" from G. L. c. 272, § 31. As of the time of the charged conduct on September 25, 2010, § 31 contained the very words used by the judge as well as the word "dances" ("statues, plays, dances"). See G. L. c. 272, § 31 (definition of "matter"), as amended by St. 2002, c. 161, § 1. Shortly before, effective July 11, 2010, the Legislature had amended that provision by *addition* of the following language to the definition of "matter":

> "or any electronic communication including, but not limited

to, electronic mail, instant messages, text messages, and any other communication created by means of use of the Internet or wireless network, whether by computer, telephone, or any other device or by any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photo-electronic or photo-optical system."

G. L. c. 272, § 31 (definition of "matter"), as appearing in St. 2010, c. 74, § 2. The Legislature enlarged the definition in response to the decision of *Commonwealth* v. *Zubiel*, 456 Mass. 27, 30 (2010), that "the term 'visual representation' in § 31 refers to photographs and other images, but not text."

The defendant contends that the cell phone images here constitute an "electronic communication" contemplated by the 2010 enlargement but omitted by the judge so as to render her instruction deficient. The argument is not logical. Both before and after the 2010 enlargement, the statutory definition included the "visual representation" clause communicated by the judge to the jury. That language covered the defendant's cell phone images. See *Perry* v. *Commonwealth*, 438 Mass. 282, 285 (2002) ("The phrase '*any* . . . photograph' means what it says, any photograph without limitation"); *Commonwealth* v. *Zubiel*, 456 Mass. at 30-31 (itemization of visual representations); *Commonwealth* v. *Buswell*, 468 Mass. 92, 107 (2014) (nude photographs constitute matter harmful to a minor); *Commonwealth* v. *Washburn*, 55 Mass. App. Ct. 493, 496 (2002) (computer images "fit comfortably" within the terms "visual representation" and "pictures").[12]

3. *Conditional intent.* The defendant asserts that his persistent refusal to send A.S. a picture of his nude body until she had transmitted one of hers left the Commonwealth short of proof beyond a reasonable doubt of the essential element of wrongful intent to disseminate matter harmful to minors under G. L. c. 272, § 28.

---

[12]An amendment may clarify, rather than alter, the meaning of a statute. An amendment identifying "a particular technological advance does not mean that such material was not embraced by the prior statutory language." *Perry* v. *Commonwealth, supra* at 288.

Viewed in the light most favorable to the prosecution, see *Commonwealth* v. *Latimore*, 378 Mass. at 676-678, the evidence established that the defendant, with knowledge of her age, repeatedly offered to send A.S. a picture of his nude body. His refusal to send the picture unless A.S. first sent him equivalent pictures of herself does not prevent proof beyond a reasonable doubt of the intent to disseminate prohibited by the statute. Intent may be conditional and still punishable. See *Commonwealth* v. *Moran*, 453 Mass. 880, 885 n.8 (2009); *Commonwealth* v. *Hanright*, 466 Mass. 303, 312 (2013) (criminal intent may be "conditional or contingent" on the part of a joint venturer), and cases cited. It is a "core principle" that "a defendant may not negate a proscribed intent by requiring the victim to comply with a condition that the defendant has no right to impose." *Holloway* v. *United States*, 526 U.S. 1, 9-11 & n.11 (1999), citing Model Penal Code § 2.02(6) (1985) ("When a particular purpose is an element of an offense, the element is established although such purpose is conditional, unless the condition negatives the harm or evil sought to be prevented by the law defining the offense"). See 1 LaFave, Substantive Criminal Law § 5.2(d), at 350-351 (2d ed. 2003). Here the condition imposed by the defendant did not nullify the harm or evil of the statutory offense, but rather aggravated it by proposal of a second crime (posing a minor in a state of nudity by solicitation, enticement, or encouragement).[13]

4. *Sufficiency of evidence.* The defendant contends also that the evidence failed to show beyond a reasonable doubt his

---

[13]The subsequent role of the police officers at the station house does not relieve the defendant of wrongful intent. *After* the defendant had begun the train of communication and requested a photograph of A.S.'s body, the officers supervised some of A.S.'s responses and then impersonated her. The statute requires that the defendant intend to disseminate prohibited material to a recipient whom he knows or believes to be a minor; it does not require him to communicate his intent to a minor. See *Commonwealth* v. *Disler*, 451 Mass. 216, 219 n.5, 222-223 (2008) (conviction of child enticement under G. L. c. 265, § 26C, where "minor" not a real person), and cases cited.

The defendant did not assert any defense of entrapment at trial. In light of the evidence of his predisposition and initiative, that position had no prospect of success. See, e.g., *Commonwealth* v. *Disler, supra* at 232-233 (Commonwealth's proof of predisposition will override defense of entrapment); *Commonwealth* v. *Buswell*, 468 Mass. at 106 (same).

knowledge of A.S.'s age and his authorship of the text messages to her. As for the first argument, A.S. testified that she had informed the defendant by text message of her age of sixteen. He did not object to that testimony and does not now argue that its admission was improper.[14]

As to the second argument, ample circumstantial evidence identified the defendant as the transmitter of the offending text messages through the afternoon and evening of September 25, 2010. Their timing closely followed the meeting in the park. The tank top image extracted from the cell phone showed the user of the cell phone as the man in the park. The law does not require the prosecution to eliminate other potential perpetrators. *Commonwealth* v. *Salemme*, 395 Mass. 594, 601 (1985). See *Commonwealth* v. *Robinson*, 30 Mass. App. Ct. 62, 72 (1991). Circumstantial evidence alone will satisfy the *Latimore* standard. *Commonwealth* v. *Martino*, 412 Mass. 267, 272 (1992). *Commonwealth* v. *Platt*, 440 Mass. 396, 401 (2003).

5. *Curfew.* On the conviction of soliciting, enticing, or encouraging a child to pose in a state of nudity, G. L. c. 272, § 29A(*a*), the judge sentenced the defendant to a term of not less than ten and not more than twenty years in State prison;[15] and on the conviction of possession of matter harmful to minors with intent to disseminate, G. L. c. 272, § 28,[16] to a consecutive probationary term of ten years, including among its conditions a nighttime curfew from 10:00 P.M. to 6:00 A.M., seven days per week.

The defendant proposes that we vacate the curfew condition

---

[14]In determining the sufficiency of the evidence under the *Latimore* test, we include both properly and improperly admitted information. See *Commonwealth* v. *Farnsworth*, 76 Mass. App. Ct. 87, 98 (2010); *Commonwealth* v. *Belmer*, 78 Mass. App. Ct. 62, 68 n.3 (2010). See also *Kater* v. *Commonwealth*, 421 Mass. 17, 18 (1995) (if the evidence admitted at trial was sufficient to send the case to the jury, but is insufficient if all the improperly admitted evidence is disregarded, double jeopardy principles do not bar retrial).

[15]Section 29A(*a*) limited the trial judge's sentencing discretion to the mandatory alternatives of "imprisonment in the state prison for a term of not less than ten nor more than twenty years, or by a fine of not less than ten nor more than fifty thousand dollars, or by both such fine and imprisonment."

[16]Section 28 authorized confinement in State prison for a period up to five years, or in a house of correction for a period up to two and one-half years, or fines, alone or in combination with incarceration.

because (1) it is not related to his personal characteristics or the underlying crime, and (2) it will interfere with his capacity to conduct a business and to support his family. Because he did not preserve this argument below, we review to determine only whether an error has occurred and, if so, whether it created a substantial risk of a miscarriage of justice. *Commonwealth* v. *Gomes*, 73 Mass. App. Ct. 857, 858 (2009) (unpreserved issue of probationary terms), citing *Commonwealth* v. *Simmons*, 448 Mass. 687, 690-691 (2007).

General Laws c. 276, § 87, confers broad discretion upon a judge to place a defendant on probation and to impose reasonable conditions. See *Commonwealth* v. *Goodwin*, 458 Mass. 11, 16 (2010); *Commonwealth* v. *Rousseau*, 465 Mass. 372, 389 (2013). The primary goals of a probation program are the rehabilitation of the probationer and protection of the public by supervision of the probationer. *Commonwealth* v. *LaFrance*, 402 Mass. 789, 795 (1988). "Other recognized goals . . . include punishment, deterrence, and retribution." *Commonwealth* v. *Power*, 420 Mass. 410, 415 (1995). The objectives "are best served if the conditions of probation are tailored to address the particular characteristics of the defendant and the crime." *Commonwealth* v. *Pike*, 428 Mass. 393, 403 (1998).

If a probation condition restricts the exercise of a constitutionally protected right, the condition must reasonably relate to a probationary goal.[17] *Commonwealth* v. *Power, supra* at 416-417. That standard turns closely on "the circumstances and characteristics of the particular defendant and his offenses." *Commonwealth* v. *Gomes*, 73 Mass. App. Ct. at 859. As a general rule, "probationer[s do not] have a right to be free from conditions that severely restrain [their] freedom of action." *Commonwealth* v. *Power, supra* at 416, quoting from *United States* v. *Tonry*, 605 F.2d 144, 148 (5th Cir. 1979).

In the present circumstances, the imposition of the curfew did not constitute an abuse of discretion. Before sentencing, the

---

[17]A curfew limits the fundamental right of free movement within the Commonwealth as protected by the Massachusetts Declaration of Rights. *Commonwealth* v. *Weston W.*, 455 Mass. 24, 32-33, 34 (2009) ("the Massachusetts Declaration of Rights guarantees a fundamental right to move freely within the Commonwealth"; "curfews represent a particularly sweeping restriction on the right to free movement").

Commonwealth submitted information that the defendant had been a level three sex offender at the time of the underlying offenses;[18] that he had a history of twenty-eight criminal convictions; and that the history included convictions of rape and abuse of a child, and annoying and accosting a person of the opposite sex. See *Commonwealth* v. *Lapointe*, 435 Mass. 455, 459 (2001) ("A judge, in furnishing an appropriate individualized sentence, may consider 'many factors which would not be relevant at trial including hearsay information about the defendant's character, behavior, and background' "), quoting from *Commonwealth* v. *Goodwin*, 414 Mass. 88, 92 (1993).

That history established the defendant's dangerous behavior as recidivist. The judge reasonably could have concluded that imposition of the curfew was properly related to the probationary goals of protection of the public and deterrence. See *Commonwealth* v. *Lapointe*, 435 Mass. at 457-458, 459-461 (upholding condition preventing the probationer from living with any of his minor children, current or future, even though it affected his right to association, because the condition was reasonably related to the goals of probation); *Commonwealth* v. *Kendrick*, 446 Mass. 72, 75-77 (2006) (upholding condition that the probationer have no contact with children under sixteen and implied condition that he avoid any locations where he was likely to come into contact with children under sixteen); *Commonwealth* v. *Williams*, 60 Mass. App. Ct. 331, 332 (2004) (upholding condition that the probationer refrain from any use of alcohol even though his criminal case did not involve any evidence of alcohol use or abuse).

The law permits the modification of probationary terms. Although statutory authority does not expressly confer that power, *Commonwealth* v. *Goodwin*, 458 Mass. at 16 n.7, "[u]nder our common law, a judge has authority to modify or add conditions

---

[18]"Level three offenders are considered high risk and, in addition to the notification process required for levels one and two, the police departments are required to notify organizations in the community and individual members of the public that are likely to encounter such offenders, and neighboring police districts may inform the residents of their municipality of such offenders they are likely to encounter who reside in an adjacent city or town. G. L. c. 6, § 178K(2)(c)." *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 771 (2006).

of probation 'to serve the ends of justice and the best interests of both the public and the defendant.' " *Id.* at 16, quoting from *Buckley* v. *Quincy Div. of the Dist. Court Dept.*, 395 Mass. 815, 817 (1985). Successful performance of the original terms of his program would make the opportunity for discretionary modification available to the defendant.

*Conclusion.* We therefore affirm both judgments, including the terms of probation imposed upon the offense of possession of matter harmful to minors with intent to disseminate.[19]

*Judgments affirmed.*

---

[19]We have considered the additional contentions submitted by the defendant pro se in accordance with the procedure prescribed by *Commonwealth* v. *Moffett*, 383 Mass. 201, 207-209 (1981). We find them unmeritorious.