SUPERIOR COURT 
 
 COMMONWEALTH v s. JOHN CAREY

 
 Docket:
 2277CR00324
 
 
 Dates:
 April 2, 2025
 
 
 Present:
 Jeffrey T. Karp
 
 
 County:
 ESSEX
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE DERIVED FROM WARRANTLESS EXAMINATION OF EVIDENCE OBTAINED AFTER EXECUTION OF SEARCH WARRANT IN A PREVIOUS UNRELATED CRIMINAL INVESTIGATION (Paper No. 57)
 
 

             Defendant John Carey is charged with the murder by strangulation of a woman whose body was found in Beverly on June 30,1986. The Commonwealth has announced that it intends to seek to admit at the trial of this matter evidence collected by police in 2007 from Carey’s computer pursuant to a search warrant that was issued at the time in a case in which Carey was ultimately convicted of, inter alia, attempting to murder a woman by strangulation.
            Carey has moved to suppress the evidence on the grounds that the Commonwealth must obtain a search warrant to (re)examine the evidence that was collected from his computer by police in 2007. He also argues that suppression is the appropriate remedy for the Commonwealth’s destruction of the computer and loss of the mirror image of the hard drive that the police created when conducting the computer search in 2007.
            On January 29 and February 26, 2025, the Court conducted an evidentiary hearing on Defendant's Motion To Suppress Evidence Derived From Warrantless
 
                                                            -1-
 
Examination Of Evidence Obtained After Execution Of Search Warrant In A Previous Unrelated Criminal Investigation (Paper No. 57) (“Motion”). The Court heard testimony from Captain Scott James of the Hamilton Police Department (“HPD”), and it received in evidence one exhibit.
            As is fully explained below, after thorough consideration of the parties’ submissions, arguments of counsel, and the evidence presented at the hearing, the Motion is ALLOWED in part and DENIED in part.
BACKGROUND
            The followings facts are largely not in dispute.[1]
The 2007 Case Against Carey
            In July 2007, the Grand Jury returned five indictments against Carey in the matter of Commonwealth v. John Carey, Essex Superior Court, No. 0777CR00156, charging Carey with home invasion, attempted murder by strangulation, and other offenses related to his attack on a woman and her son at their home in Hamilton (“2007 Case”).
            In the 2007 Case, the Commonwealth alleged that Carey was acquainted with the victim’s estranged husband and had performed work at the victim’s home. On June 6, 2007, at approximately 9:40 p.m., Carey knocked on the victim’s door and claimed that he was supposed to meet the victim’s husband, who lived elsewhere, there. The victim’s son was upstairs in his bedroom and no one else was in the home. Carey entered, attacked the victim in the kitchen, and began strangling her with a necktie to
 
--------------------------------------------
 
[1] To the extent that the Court explicitly makes findings of fact herein, it does so based on the credible evidence produced at the hearing and the reasonable inferences the Court has drawn from the evidence.
 
                                                            -2-
 
the point that she struggled to remain conscious. The victim’s son heard the victim cry for help, ran into the kitchen, saw Carey strangling the victim on the floor and, at the victim’s direction, stabbed Carey in the back with a small kitchen knife. The victim was able to free herself from Carey’s grip, but not before he punched her in the forehead and mouth. The victim and her son fled to (separate) homes of neighbors, who called the HPD. Carey ran from the victim’s home and drove away before police arrived. DNA of both the victim and Carey was found on the necktie.
The 2007 Search Warrant
            On August 2, 2007, Detective Kenneth Nagy of the HPD applied for and obtained a search warrant from the Ipswich District Court that authorized the seizure of computers and electronic data storage devices at Carey’s home in Braintree, so that those items could be searched for specified electronic data that “refer[ed] to . . . strangulation, asphyxiation during sex acts, and necrophilia” (“2007 Search Warrant”).[2]
The Execution Of The 2007 Search Warrant
            On approximately August 2, 2007, Det. Nagy executed the 2007 Search Warrant and seized Carey’s personal computer (“PC”). Soon thereafter, Det. Nagy transferred the PC to Sergeant Thomas Neff of the Massachusetts State Police (“MSP”), who
 
--------------------------------------------
 
[2] Necrophilia is defined as “being sexually attracted to dead bodies, or sexual activity with dead bodies” https://dictionary.cambridge.org/us/dictionary/english/necrophilia (Cambridge Advanced Learner’s Dictionary & Thesaurus (4th ed. 2012) (last accessed March 27, 2025), and as “[t]he deriving of sexual gratification from fantasies or acts involving a corpse.” https://ahdictionary.com/word/search.html?q=necrophilia (American Heritage Dictionary of the English Language (5th ed. 2011)) (last accessed March 27, 2025).
 
                                                            -3-
 
downloaded the contents of the hard drive of the PC, thus, creating a “mirror image” of the hard drive (“Mirror Image”).[3]
            Sgt. Neff then used forensic software to index the locations of the electronic data on the Mirror Image. He found that the Mirror Image contained, inter alia, temporary internet search files and more than 25,000 images of system graphics and photographs.[4]
            Using the forensic software, Sgt. Neff next searched (“scrolled through”) the indexes of the Mirror Image to identify items that fell within the scope of the 2007 Search Warrant, i.e., electronic data regarding strangulation, asphyxiation during sex acts, and necrophilia. He saved the search results from the Mirror Image on a compact disc (“Search CD”),[5] a copy of which was produced to Carey during the 2007 Case and in this case.[6]
            While conducting the search, Sgt. Neff identified the following items that fell within the scope of the 2007 Search Warrant: (a) approximately 400 images that
 
--------------------------------------------
 
[3] See Commonwealth v. Kaupp, 453 Mass. 102, 110 (2009) (observing that detective “executed the search warrant by making a ‘mirror image’ of [defendant]’s hard drives and the electronic data storage devices.”); Commonwealth v. Ericson, 85 Mass. App. Ct. 326, 331 n.8 (2014) (“To preserve probable cause in the circumstance of delayed completion of forensic examination of a cell phone, police may make a ‘mirror image’ of the phone’s data.”).
[4] The information regarding Sgt. Neff’s forensic examination of the PC’s hard drive has been taken from the transcript of his testimony on March 21, 2008, at the trial of the 2007 Case. The Commonwealth has provided the Court will a CD containing the transcripts of the trial proceedings. Sgt. Neff died in December 2011.
[5] The Commonwealth filed a copy of the Search CD under seal, which the Court has examined cursorily.
[6] During the 2007 Case, Carey filed a motion to suppress the evidence recovered from the PC, but later waived the motion after the court (Whitehead, J.) conducted a colloquy. See Margin Endorsement Order on Defendant’s Motion To Suppress, docketed in the 2007 Case as Paper No. 35.
 
                                                            -4-
 
depicted strangulation acts or themes; (b) 978 items and 47 files regarding asphyxiation, including electronic data concerning strangulation and asphyxiation- themed Google searches; (c) “remnants” of approximately ten strangulation-related articles and websites that were accessed via these Google searches; and, (d) a ninety- second video depicting a man strangling a woman to death (collectively “Strangulation Search Results”).[7]
The Trial Of The 2007 Case
            The 2007 Case was tried before a jury in March 2008.
            Prior to trial, the Commonwealth filed a motion in limine seeking to admit the following content from the Strangulation Search Results: fourteen images, one video, and a five-page document that contained remnants of Google searches for “asphyxia,” “strangled women,” “asphyxiation,” “strangle,” “hog tie and asphyxiation,” and “asphyxia and videos” (“Google Document”).[8] See Commonwealth’s Motion In Limine To Admit Prior Bad Act Evidence Recovered From Defendant’s Computer (Paper No. 74 in 2007 Case) (“Trial Motion”). Color copies of the fourteen images and the Google Document were attached to the Trial Motion, which was not impounded.
            After a hearing on March 18, 2008, the Court (Welch, J.), allowed the Trial Motion over Carey’s objection, and the trial began the next day.
 
--------------------------------------------
 
[7] The Commonwealth concedes that, in addition to the Strangulation Search Results, which fall within the scope of the 2007 Search Warrant, the Search CD contains electronic data that fall outside the scope of the 2007 Search Warrant, such as numerous thumbnail images of personal photographs and non-strangulation themed pornography. This nonresponsive electronic data are apparently intermingled in folders and files on the Search CD with some responsive data.
[8] Sgt. Neff saved the Google Document on the Search CD as a Word document.
 
                                                            -5-
 
            During the trial, eight of the images, the video, and the Google Document [9] proffered by the Commonwealth in the Trial Motion (collectively, “Strangulation Exhibits”) were admitted into evidence (without objection from Carey).[10]
            Carey testified at the trial that he enjoyed asphyxiating woman during sex. He admitted that he obtained the Strangulation Exhibits from searches he performed on the PC of pornography and asphyxiation websites, and that he was a paying member of a necrophilia-related website that contained asphyxiation-related content. Carey further claimed that the victim’s son had interrupted a consensual sexual encounter.
            On March 26, 2008, the jury returned guilty verdicts against Carey on all crimes charged in the indictments (except one assault and battery indictment). Carey was sentenced to a lengthy state prison sentence and probation for five years after his release from prison.
            Rejecting Carey’s argument that the court (Welch, J.) erred in admitting the Strangulation Exhibits, Carey’s convictions were affirmed on May 26, 2011, by the Appeals Court, Commonwealth v. Carey, 79 Mass. App. Ct. 587 (2011), and on September 7, 2012, by the SJC after further appellate review, Commonwealth v. Carey, 463 Mass. 378 (2012).
            As a result of his convictions, Carey was required to submit a sample of his DNA to the MSP. See G.L. c. 22E, § 3(a). Thereafter, Carey’s DNA profile was submitted to a national DNA database, the Combined DNA Index System (“CODIS”).
 
--------------------------------------------
 
[9] During the trial of the 2007 Case, Det. Neff described the Google Document as a document that contained “remnants of articles that were apparently accessed through the Google search[es],” including an “article . . . about an appeal in a murder case involving strangulation.”
[10] The parties report that the SJC’s Clerk’s Office, which last had possession of the Strangulation Exhibits, is unable to find them.
 
                                                            -6-
 
The 1986 Murder Investigation
            On July 30, 1986, the body of Claire Gravel, a 20 year-old local college student, was found in Beverly in a wooded area along the northbound side of Route 128. Ms. Gravel had been strangled to death with the shirt she had been wearing.
            The investigation into Gravel’s death went cold until 2012 when police determined, through a CODIS “hit,” that DNA collected from shirt believed to have been used as a ligature to strangle Ms. Gravel was linked to Carey.
The Loss Of The PC And Hard Drive
            As is discussed in more detail in § III of the Discussion, infra, in approximately November 2011, after first removing and setting aside the hard drive, the HPD destroyed the PC, believing that it was a computer that was previously used by the HPD, rather than evidence in a criminal case.
            On May 1, 2012, the HPD destroyed the PC’s hard drive by driving a screw through it.
            On May 17, 2012, a law, which requires all law enforcement agencies to retain evidence until a defendant who is convicted of a crime is no longer on parole or probation supervision, went into effect. See G.L. c. 278A, § 16(a). The law also requires the retention of evidence “in a manner that is reasonably designed to preserve the evidence . . . and to prevent its destruction or deterioration.” Id.
The 2022 Case
            As for the instant action, on August 24, 2022, the Grand Jury returned a single indictment against Carey charging him with the 1986 murder of Ms. Gravel and he was arraigned in October 2022.
 
                                                            -7-
 
DISCUSSION
            The Commonwealth represents that if the Court denies the Motion, it intends to limit its examination of the contents of the Search CD to the Strangulation Search Results, i.e., the Commonwealth does not intend to search folders and files on the Search CD that contain the thumbnail images that fell outside the scope of the authority granted in the 2007 Search Warrant. See note 7, supra. More specifically, if the Motion is denied, the Commonwealth intends to only examine specific, identifiable files on the Search CD that contain only the Strangulation Search Results.
            As stated, Carey seeks the suppression of the entire contents of the Search CD. He argues that this evidence must be suppressed for four reasons. First, he contends that the Commonwealth’s contemplated examination of the Search CD amounts to a search in the constitutional sense under the Fourth Amendment to the United States Constitution and Article 14 of the Massachusetts Declaration of Rights because it will intrude on his reasonable expectation of privacy in the contents of the Search CD. Consequently, Carey asserts that the Commonwealth must obtain a search warrant in this case to examine the Search CD.
            Second, Carey argues that a search warrant may only be executed once and that the Commonwealth’s contemplated examination of the Strangulation Search Results amounts to a second, impermissible execution of the 2007 Search Warrant. Third, Carey asserts that the Commonwealth’s current possession of the Search CD is unlawful because it should have been restored to him long ago after the trial in the 2007 Case. Fourth, Carey contends he has been “irreparably prejudiced” by the HPD’s destruction of the PC and the hard drive, and the MSP’s loss of the Mirror Image.
 
                                                            -6-
 
            The Court will address these arguments in turn.
I. CAREY HAS MET HIS BURDEN TO SHOW THAT HE HAS A REASONABLE EXPECTATION OF PRIVACY IN MOST OF THE CONTENTS OF THE SEARCH CD
            Carey first argues that the Commonwealth’s proposed examination of the contents of the Search CD amounts to a search in the constitutional sense and, thus, the Commonwealth must first obtain a search warrant to do so.
            As the SJC has repeatedly observed:
To be entitled to the protections against government searches under art. 14, an individual must demonstrate that the challenged government conduct amounted to a search in the constitutional sense . . . Under the reasonable expectation of privacy test, “the government performs a search when it intrudes on a ‘subjective expectation of privacy … that society is prepared to recognize as reasonable.” . . . Thus, “a defendant must prove both a subjective and an objective expectation of privacy.”
Commonwealth v. Carrasquillo, 489 Mass. 107, 117 (2022) (citations omitted).
            For its part, the Commonwealth argues that Carey has failed to show that he has an objectively reasonable expectation of privacy in the Strangulation Search Results; thus, the Commonwealth contends that it is not required obtain a search warrant to examine the Strangulation Search Results contained on the Search CD.
A. Carey Has Met His Burden To Show A Subjective Expectation Of Privacy In The Contents Of The Search CD
            The Court begins its analysis of whether Carey has sufficiently shown that he has a subjective expectation of privacy in the contents of the Search CD by scrutinizing his affidavit in support of the Motion (Paper No. 74).
            “To have a subjective expectation of privacy, one must perceive or otherwise genuinely believe that the object of the alleged search is private . . . . Thus, the inquiry
 
                                                            -9-
 
turns in part on what an individual knows, that is, whether the individual was subjectively aware of the presence or absence of protections in place to preserve his or her privacy.” Id. at 117 – 118. The defendant has the burden of proof to show a subjective expectation of privacy. Id. at 120.
            The Commonwealth argues that Carey’s affidavit “does not credibly allege [that he had a subjective expectation of privacy in the contents of the Search CD],” and that certain claims he made in the affidavit “are belied by his trial testimony.” Commonwealth’s Verified Response, p. 2 (Paper No. 75). The Court disagrees.
            Rather, the Court rules that Carey has sustained his burden. His affidavit as a whole, and in particular paragraphs 7 and 8, show that Carey had a subjective privacy interest in the contents of the Search CD. See e.g., Commonwealth v. Mora, 485 Mass. 360, 366 (2020) (ruling that an affidavit signed by the defendant “in which [he] stated that [he] did not expect to be surveilled [via the use of a pole camera] coming and going from [his] homes over an extended period” by the police sufficiently raised subjective expectation of privacy); Commonwealth v. Augustine, 467 Mass. 230, 255, 255 n.38 (2014) (ruling “the defendant made a showing of a subjective privacy interest in his location information reflected in the CSLI records,” where he “submitted an affidavit stating that he acquired his cellular telephone for his own personal use, never permitting the police or other law enforcement officials access to his telephone records.”).
 
                                                            -10-
 
B. Carey Has Met His Burden To Show An Objectively Reasonable Expectation Of Privacy In Most Of The Contents O f The Search CD
            Now that Carey has demonstrated a subjective privacy interest, he must also show that the privacy interest is objectively reasonable, i.e., “one that society is willing to recognize as reasonable for the protections of the Fourth Amendment and art. 14 to apply.” Commonwealth v. Johnson, 481 Mass. 710, 721 (2019) (citations omitted); see also Commonwealth v. Williams, 453 Mass. 203, 209 (2009) (ruling “any subjective expectation of privacy the defendant may have had [in a common area basement] was not objectively reasonable.”). An objectively reasonable “expectation of privacy is one that society would regard as ‘reasonable,’ ‘justifiable,’ or ‘legitimate.’” Mora, 485 Mass. at 368 (citations omitted). “‘The inquiry is one highly dependent on the particular facts and circumstances of the case.’” Id. (citations omitted).
            Here, the Court has no difficulty ruling that Carey has an objectively reasonable expectation of privacy in the contents of the Search CD that are outside the scope of the 2007 Search Warrant, i.e., content that is not strangulation, asphyxiation, or necrophilia- related, and that, accordingly, the Motion must be allowed as to that content.[11]
            Further, the Court has no trouble ruling that Carey does not have an objectively reasonable expectation of privacy in the Strangulation Search Results content that was attached to the Commonwealth’s Trial Motion in the 2007 Case and which remains publicly accessible, i.e., color copies of fourteen strangulation-related photographs and the Google Document.
 
--------------------------------------------
 
[11] The Court makes this ruling for completeness sake notwithstanding that the Commonwealth has stated in its brief that it only seeks to examine the Strangulation Search Results.
 
                                                            -11-
 
            Likewise, the Court has no trouble ruling that Carey does not have an objectively reasonable expectation of privacy in the Strangulation Exhibits. After all, that content was displayed to, and discussed publicly at length by Carey, Det. Neff, attorneys and others during the hearing on the Trial Motion, the trial of the 2007 Case, and Carey’s two appellate proceedings. To be sure, the Court has read the trial transcripts and finds that Carey and Det. Neff described the Strangulation Exhibits in significant detail before the jury.
            However, the Court’s determination of whether the Strangulation Search Results content that was neither attached to the Commonwealth’s Trial Motion nor admitted as exhibits at the trial (i.e., the Strangulation Exhibits) is more difficult.
            For his part, Carey strenuously argues that the Commonwealth’s request “to trawl through [his] private computer files to look for crimes unrelated to the investigation” that served as the basis for issuance of the 2007 Search Warrant is constitutionally analogous to the circumstances in Commonwealth v. Yusuf, 488 Mass. 379 (2021).
            Yusuf involved video footage that was recorded by a Boston police department (“BPD”) officer’s body-worn camera while responding to a call about a domestic disturbance at the defendant’s home. Id. at 379. The video footage captured intimate details of the parts of the home through which the officer traveled as he provided the requested assistance. Id. at 380. The footage was stored by the BPD and then later retrieved and reviewed, without a search warrant, in connection with an unrelated firearms investigation to confirm a suspicion that the defendant was engaged in criminal activity. Id.
 
                                                            -12-
 
            The SJC found the BPD’s later review of the video footage to be problematic. It ruled that, while “the use of the body-worn camera within the [defendant’s] home was not a search in the constitutional sense,” id. at 380, “[t]he later, warrantless, investigatory review of the video footage, . . . unrelated to the domestic disturbance call, was unconstitutional [because] [t]hat review resulted in an additional invasion of privacy, untethered to the original authorized intrusion into the defendant’s home.”[12] Id.
            According to Carey, like the BPD’s review of the video footage in Yusuf, the Commonwealth’s contemplated examination of the Strangulation Search Results in this case is “an additional invasion of privacy, untethered to the original authorized intrusion into” the contents of the PC. Carey further argues that the Commonwealth’s contemplated “second search” is even more “untethered” to the original search authorized by the 2007 Search Warrant than the second search in Yusuf because the second search contemplated here by the Commonwealth is occurring more than 17 years after issuance of the 2007 Search Warrant, i.e., the original authorized intrusion, whereas in Yusuf, the BPD’s review of the video footage took place only two weeks after it was permissibly recorded.
            Moreover, Carey argues that his expectation of privacy in the contents of the Search CD is objectively reasonable because, like in Yusuf, it would be unreasonable to
believe that “an individual might expect a [CD containing the contents of their personal computer] made during a lawful police [search] would be preserved indefinitely,
 
--------------------------------------------
 
[12] The BPD officer who reviewed the video footage in Yusuf included his observations of the interior of the defendant’s home in an affidavit in support of a warrant to search the defendant’s home for firearms evidence. Id. at 383 – 384.
 
                                                            -13-
 
accessed without restriction, and reviewed at will for reasons unrelated to the purposes of the [initial] police [search].” Id. at 392.
            Remembering that, when assessing whether a defendant has met his burden to show that a subjective privacy interest is objectively reasonable, “‘[t]he inquiry is one highly dependent on the particular facts and circumstances of the case,’” Mora, 485 Mass. at 368 (citations omitted), the Court disagrees with Carey that the teachings of Yusuf are sufficiently analogous and controlling here for two reasons.
            First, in Yusuf, unlike here, the search was of “the interior of the home, the most sacred, constitutionally protected area.” Yusuf, 488 Mass. at 380. The SJC repeatedly emphasized this point by observing that:
A person’s home is among the areas expressly protected under both the Fourth Amendment . . . and art. 14 . . . Specifically enumerated in these constitutional texts, “the home is first among equals.”
….
“At the risk of belaboring the obvious, private residences are places in which the individual normally expects privacy free of governmental intrusion not authorized by a warrant, and that expectation is plainly one that society is prepared to recognize as justifiable.”
….
As the United States Supreme Court repeatedly has stressed, the home is a “constitutional[ly] differen[t]” location.
Id. at 386, 391, 396.[13]
            Second, unlike the body camera footage in Yusuf, the Strangulation Search Results at issue here are the product of court-sanctioned conduct by police, i.e.,
 
--------------------------------------------
 
[13] In comparing the constitutional significance of the search of a home with the search of electronic data on a computer, the Court does not minimize the significant privacy interests people have in the latter. However, the Court believes that in Yusuf, the SJC placed paramount constitutional significance in the former.
 
                                                            -14-
 
obtained pursuant to a validly issued search warrant, and the Commonwealth’s proposed examination is well within the bounds of that search warrant.
            While the Court disagrees with Carey that Yusuf is controlling in determining whether he has an objectively reasonable expectation of privacy interest here, the Court also disagrees with the Commonwealth’s emphasis on the fact that the evidence it seeks to examine now was previously exposed to the public and discussed by Carey in detail during the trial of the 2007 Case because this emphasis is overbroad. As stated, the Court has carefully scrutinized the trial testimony of Det. Neff and Carey, and finds that, while Det. Neff mentioned that he found hundreds of items on the PC that were responsive to the 2007 Search Warrant and Carey testified broadly about visiting strangulation-related and other websites, the only content on the Search CD that Det. Neff and Carey described or discussed with any specificity during the trial was the Strangulation Exhibits, in which the Court has ruled Carey has no objectively reasonable expectation of privacy.
            The Court also rejects the significance placed by the Commonwealth on the fact that it seeks to examine evidence that the police previously lawfully examined and scrutinized.
            The question for the Court remains whether, in the circumstances here, a reasonable person would expect that evidence that police obtained some seventeen years ago in a case where the judgment was affirmed by the SJC more than twelve years ago, which was not offered by the Commonwealth at the trial, would be examined now in an unrelated case. The Court answers this question in the negative and thus rules that Carey has met his burden to show that he has an objectively reasonable
 
                                                            -15-
 
expectation of privacy in the Strangulation Search Results (less the exhibits to the Trial Motion and the Strangulation Exhibits).
            Accordingly, the Motion must be allowed as to this evidence.
            Nevertheless, in § III below, the Court will address Carey’s argument that the HPD’s destruction of the PC and the hard drive, and the MSP’s loss of the Mirror Image has “irreparably prejudiced” him.[14]
II. THE COMMONWEALTH’S CURRENT POSSESSION OF THE SEARCH CD DOES NOT VIOLATE G.L. c. 276, § 3
            Next, citing G.L. c. 276, § 3, and dicta in Commonwealth v. Sacco, 401 Mass. 204 (1987), Carey argues that the Commonwealth’s current possession of the Search CD is unlawful because it should have been restored to him long ago.
            Section 3 states, in pertinent part:
If an officer in the execution of a search warrant finds property or articles therein described, he shall seize and safely keep them, under the direction of the court or justice, so long as necessary to permit them to be produced or used as evidence in any trial. As soon as may be, thereafter, all property seized under [G.L. c. 276, § 1, pertaining to stolen property] shall be restored to the owners thereof; and all other property seized in execution of a search warrant shall be disposed of as the court or justice orders and
 
--------------------------------------------
 
[14] Given the Court’s ruling, the Court will only briefly address Carey’s broad argument in the Motion that a new search warrant is required whenever the government seeks to reexamine digital evidence for a new investigatory purpose that exceeds the bounds of the first search warrant. Generally speaking, “[a] warrant may be executed only once, and thus if a place is to be searched a second time the proper procedure is to obtain a second warrant based on an affidavit explaining why there is now probable cause notwithstanding the execution of the earlier warrant.” 2 W.R. LaFave, J.H. Israel, N.J. King, & O.S. Kerr, Criminal Procedure § 3.4(j) (4th ed. 2015); see also Johnson, 481 Mass. at 737 n.7 (Lenk, J., dissenting) (“a new warrant is required whenever the government seeks to reexamine digital evidence for some new investigatory purpose that exceeds the bounds of the initial search warrant.”). This concept is sometimes called the “one warrant, one search” rule. See e.g., Braund v. State, 12 P.3d 187, 193 (Alaska Ct. App. 2000) (“Under this rule, if the police execute a warrant, perform a search, and then leave, they may not return to search again unless they have secured another warrant or unless the search is authorized by some exception to the warrant requirement.”). However, Carey has not cited, and the Court is not aware of, any Massachusetts reported decision that adopted the “one warrant, one search” rule.
 
                                                            -16-
 
may be forfeited and either sold or destroyed, as the public interest requires, in the discretion of the court or justice . . . .
G.L. c. 276, § 3 (emphasis added). Carey argues that § 3 required the Commonwealth to return the Search CD to him at the conclusion of the trial of the 2007 Case.
            The Court agrees that § 3 arguably expects that the Commonwealth will take certain steps concerning property that has been seized until a court orders the disposition of the property. However, it would be illogical to require the Commonwealth to take any such steps until after a defendant, who has been convicted at trial, exhausts his appellate rights and final judgments enter. Here, the SJC affirmed the judgments of conviction in the 2007 Case on September 7, 2012.
            However, on May 17, 2012, four months before the SJC affirmed the judgments in the 2007 Case, G.L. c. 278A, § 16(a), went into effect. That provision requires “governmental entit[ies] that [are] in possession of evidence . . . that is collected for its potential evidentiary value during the investigation of a crime,” to “retain such evidence . . . for the period of time that a person remains in the custody of the commonwealth or under parole or probation supervision in connection with that crime.” G.L. c. 278A, § 16(a) (emphasis added). Here, given that Carey was sentenced in March 2008 to serve a twenty-year state prison sentence, which will be followed by five years of probation, there is no legitimate dispute that § 16(a) requires the Commonwealth to continue to retain the Search CD.
            Likewise, the dicta in Sacco, which cites to G.L. c. 276, § 3, for the proposition that “[p]roperty seized pursuant to a search warrant must be restored to its owners when it is no longer needed,” 401 Mass. at 207 n.3, is superseded by the passage of
 
                                                            -17-
 
G.L. c. 278A, § 16(a), which significantly expanded the length of time that evidence is “needed” by the Commonwealth.
III. CAREY IS NOT ENTITLED TO A REMEDY FOR THE DESTRUCTION AND LOSS OF EVIDENCE BECAUSE THE POLICE D ID NOT ACT RECKLESSLY
            Carey last argues that he has been “irreparably prejudiced” by the HPD’s destruction of the PC and the hard drive, and the MSP’s loss of the Mirror Image. He contends that, with the hard drive or Mirror Image, he would be able to show in this case that the PC did not contain digital evidence regarding the 1986 murder and that his accumulation of strangulation-related content on the PC is temporally remote from the 1986 murder.
            As stated, the HPD transferred the PC to the MSP shortly after seizing it on August 7, 2007. In October 2007, after Sgt. Neff made the Mirror Image and the Search CD, the PC was returned to the HPD, who evidently failed to log it into its evidence records and apparently stored it with the HPD’s own computer equipment.
            The brand and model of the PC was the same as the computers used at the time by the HPD. The HPD deemed its computers obsolete and went about destroying them in November 2011. At the time, failing to recognize the PC as evidence and believing that it was the HPD’s obsolete property, the HPD removed, photographed, and stored the PC’s hard drive, and then destroyed the PC. Like the hard drives taken from the HPD’s own obsolete computers, the HPD put aside the PC’s hard drive to await destruction by the Town of Hamilton (“Town”). Then, on May 1, 2012, the Town
 
                                                            -18-
destroyed the PC’s hard drive, along with the hard drives that were taken from obsolete computers belonging to the Town and the HPD.[15]
            Generally speaking, a defendant’s due process rights may be violated when the Commonwealth fails to preserve exculpatory evidence. See e.g., Commonwealth v. Sanford, 460 Mass. 441, 446 (2011) (observing that defendant’s right to remedial action for Commonwealth’s loss or destruction of potentially exculpatory evidence stems from “defendant’s due process right to a fair trial”).
            As is pertinent here, the SJC has stated that:
[T]here are two avenues by which to seek a remedy of suppression or exclusion on a claim that potentially exculpatory evidence has been lost or destroyed by the government. In the first, the defendant must demonstrate the exculpatory nature of the destroyed evidence, by establishing “a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [material] would have produced evidence favorable to his cause.” . . . If he meets this initial burden, but not otherwise, the court will proceed to balance the potential prejudice to the defendant . . . , the materiality of the evidence, and the culpability of the Commonwealth.
If a defendant is unable to meet this threshold burden, he “may be independently entitled to a remedy” of exclusion if the loss or destruction of evidence was due to the bad faith or reckless acts of the Commonwealth.
Id. at 447 (quotations and citations omitted).
            Here, Carey solely presses the second avenue under this framework, which allows him to seek a remedy for the destruction and loss of evidence “if the loss or destruction of evidence was due to the bad faith or reckless acts of the Commonwealth.” Commonwealth v. Williams, 475 Mass. 705, 723 (2016). “In such a
 
--------------------------------------------
 
[15] The record before the Court is silent regarding the circumstances of the loss of the Mirror Image. As best as the Court can decipher, the MSP retained the Mirror Image after making it, lost it thereafter, and the Commonwealth learned of the loss during the proceedings in this case.
 
                                                            -19-
 
case, the judge may infer properly the exculpatory nature of the destroyed evidence, in essence shifting to the Commonwealth the burden to show that the lost or destroyed evidence was not exculpatory.” Sanford, 460 Mass. at 447.
            While the parties have not provided, and the Court has not found, a definition or example of reckless conduct in the context at issue, generally speaking, under our criminal law, “‘[a] person acts recklessly when he consciously ignores, or is indifferent to, the probable outcome of his actions. . . . [or] if he . . . knew, or must have known, that such actions would create a substantial and unjustifiable risk . . . ’” Commonwealth v. St. Martin, 105 Mass. App. Ct. 71, 73 n.4 (2024) (citation omitted).
            Here, the Court finds that, upon the return of the PC in October 2007 from the MSP, the HPD was negligent in failing to log the PC into its evidence records and store it in the HPD evidence room, and by storing the PC with its own computer equipment.[16]
            However, based on the record before it, the Court has little difficulty in ruling that the conduct of the HPD in destroying the PC and hard drive, and that of the MSP in losing the Mirror Image was neither reckless nor done in bad faith. Accordingly, Carey “cannot, therefore, take advantage of the analysis more favorable to the defendant for such cases, which would require the Commonwealth to show that ‘the lost or destroyed evidence was not potentially exculpatory,’” Commonwealth v. Seino, 479 Mass. 463, 470 n.21 (2018) (citation omitted), and thus cannot show that he is entitled to a remedy.
 
--------------------------------------------
 
[16] “[E]ven where the government’s level of culpability is no greater than negligence, the defendant may still be entitled at trial to make an argument that focuses on such negligence -- such as, for example, that the negligence reflects an inadequate or incompetent investigation by the government that may give rise to a reasonable doubt as to the defendant’s guilt.” Commonwealth v. Williams, 455 Mass. 706, 718 (2010). Given that Carey has not pressed in the Motion for a remedy due to the HPD’s negligence, the Court expresses no opinion at this time as to whether Carey should be entitled to make such an argument during the trial.
 
                                                            -20-
 
IV. CONCLUSION
            In sum, the Motion is DENIED as to the contents of the Search CD that were attached to the Trial Motion or admitted during the trial of the 2007 Case, and is otherwise ALLOWED.
ORDER
            For the above reasons, it is HEREBY ORDERED that:
            1. Defendant's Motion To Suppress Evidence Derived From Warrantless Examination Of Evidence Obtained After Execution Of Search Warrant In A Previous Unrelated Criminal Investigation (Paper No. 57) is DENIED as to the contents on the Search CD (hereinbefore defined) that were attached to Commonwealth’s Motion In Limine To Admit Prior Bad Act Evidence Recovered From Defendant’s Computer (Paper No. 74) in the matter of Commonwealth v. John Carey, Essex Superior Court, No. 0777CR00156, or admitted during the trial thereof, i.e., fourteen images, one video, and the Google Document (hereinbefore defined).
            2. Said Motion is ALLOWED in all other respects and, accordingly, all of the
contents on said Search CD other than the items referenced in ¶ 1 are HEREBY
SUPPRESSED and shall not be admitted at the trial of this matter.
            3. The Commonwealth is granted leave to have a member of the prosecution team examine the files on said Search CD that it has represented are likely to contain the content that is the subject of ¶ 1 hereof and copy said content onto a thumb drive, or similar storage device, and promptly provide a copy of the thumb drive or storage device to defense counsel.
            4. The Commonwealth is granted leave to, within 21 days hereof, apply for a search warrant before the undersigned judge to examine the contents of said Search CD.[17]
/s/Jeffrey T. Karp
Associate Justice, Superior Court 
April 2, 2025
--------------------------------------------
 
[17] Of course, if the undersigned judge approves the search warrant, another judge will hear a motion to suppress, if filed.